**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CAROLYN M. KLOECKNER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:09CV00804 ERW |
| | ) | |
| THOMAS E. PEREZ, Secretary of Labor, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This matter comes before the Court on "Plaintiff's Motion to Compel Defendant to Produce Unredacted Copy of OIG Complaint" [ECF No. 122], "Defendant's Motion in Limine" [ECF No. 127], "Plaintiff's Motions in Limine" [ECF No. 128], and "Plaintiff's Response and Objections to Defendant's Exhibit List" [ECF No. 130].

## I.     FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of the alleged discrimination and termination of Plaintiff Carolyn M. Kloeckner, a former GS-13 Senior Investigator for the Saint Louis District Office (SLDO) of the Employee Benefits Security Administration (EBSA), United States Department of Labor (DOL). On May 1, 2008, Plaintiff timely filed suit in the United States District Court for the District of Columbia, alleging she was subject to a hostile work environment, subject to retaliation for statutorily protected activity, and discriminated against on the basis of her sex, age,[1] and disability [ECF No. 1].[2]  Plaintiff's allegations largely center around three individuals: (1) Gary

---

[1] Plaintiff has voluntarily dismissed her claim of age discrimination [ECF No. 90].
[2] Plaintiff did not file suit until after she sought relief from an Administrative Law Judge (ALJ) of the Equal Employment Opportunity Commission (EEOC), the Civil Rights Center (CRC), and the Merit Systems Protection Board.

Newman, the Division Supervisor at the SLDO; (2) Steve Newman, the Associate Regional Director; and (3) Steve Eischen, the Regional Director for the Kansas City Regional Office (KCRO) as of June 2004.[3]

On May 15, 2009, the District Court for the District of Columbia granted Defendant's Motion to Transfer for Improper Venue [ECF No. 15], and on May 26, 2009, the case was transferred to this Court. In February 2010, this Court granted Defendant's Motion to Dismiss [ECF Nos. 31-32]. The Eighth Circuit affirmed on appeal, but the Supreme Court reversed, and the case was remanded to this Court. Although the Court referred the case to Alternative Dispute Resolution [ECF No. 76], the parties advised the Court mediation would be unproductive, and the Court vacated its previous order of referral [ECF No. 82].

In March 2014, Plaintiff filed her "Motion to Compel Discovery and Supporting Brief" [ECF No. 77]. The Motion included Plaintiff's request to be "provided a copy of an OIG complaint filed against her that . . . led to . . . the difference in treatment she experienced" [ECF No. 77 at 1-2]. Further, "Plaintiff agreed to redact the name of the complainant from the OIG Complaint to avoid any issue under" the law protecting the identity of OIG complainants [ECF No. 77 at 2]. After conducting an in camera review of the OIG complaint, this Court provided a "redacted copy of the complaint to the parties under seal" [ECF No. 82 at 1]. Neither Plaintiff's subsequent discovery requests [ECF No. 84] nor Second Motion to Compel [ECF No. 87] involved seeking the identity of the OIG complainant.

In June 2014, Defendant filed a Motion for Summary Judgment [ECF No. 94], which this Court granted in part and denied in part in August 2014 [ECF No. 109]. The Court granted summary judgment as to Plaintiff's disability discrimination claim and determined Plaintiff

---

[3] For the sake of clarity, the Court will refer to these individuals as Gary Newman, Steve Newman, and Eischen, respectively.

could not "go forward with her newly-alleged constructive discharge claim," leaving intact Plaintiff's sex discrimination, hostile work environment, and retaliation claims [ECF No. 109 at 14, 26].  Subsequently, Plaintiff filed the following documents: another Motion to Compel (seeking an unredacted copy of the OIG complaint) [ECF No. 122], her Motion in Limine [ECF No. 128], and her "Response and Objection to Defendant's Exhibit List" [ECF No. 130].  Similarly, Defendant filed an "Opposition to Plaintiff's Motion to Compel" [ECF No. 126], a Motion in Limine [ECF No. 127], and a "Response to Plaintiff's Objections to Defendant's Exhibit List" [ECF No. 135].

The parties have submitted a Joint Stipulation of Uncontested Facts [ECF No. 115].  As pertinent to the parties' pending motions, the parties agree the following facts are uncontested. Plaintiff was an employee of the Department of Labor's Employee Benefits Security Administration (EBSA) from July 1989 until she was discharged by the Department on July 21, 2006.  At the time of her discharge, Plaintiff was a GS-13 Senior Investigator.  From June 13, 2004 through Plaintiff's termination, Steven Eischen was the Regional Director for the Kansas City Regional Office of the EBSA.  From January 2002 through June 26, 2005, Steven Newman was the Associate Regional Director for the Kansas City Regional Office of the EBSA.  From June 26, 2005, through April 2006, Mr. Newman was the Deputy Regional Director for the Kansas City Regional Office.  At the time of Plaintiff's discharge, Mr. Newman was a GS-13 Senior Investigator in the St. Louis District Office.  From 1996 through Plaintiff's termination, Gary Newman was the District Supervisor for the St. Louis District Office of the EBSA, which is part of the Kansas City Regional Office.

On May 6, 2005, Plaintiff filed an informal EEO charge of discrimination with the Department of Labor relating to the conduct of Steven Eischen, Steven Newman, and Gary

Newman, who all learned about this charge filed against them. Plaintiff's last day in the EBSA office was May 18, 2005. On June 5, 2005, Plaintiff filed a formal charge of discrimination with the Department of Labor relating to the conduct of Eischen, Steven Newman, and Gary Newman. Plaintiff was first put on AWOL effective June 13, 2005. She continued to be on AWOL or Family Medical Leave though her discharge. Plaintiff had 17 years of satisfactory service with the EBSA and no prior discipline when she was terminated.

The parties stipulated documents maintained by the Department of Labor in the ordinary course of its business and/or produced during the course of this litigation by the Department are business records that may be introduced into evidence without the need to call a custodian of records from the Department. The parties reserved the right to make other objections to the Department's records during trial.

On September 26, 2014, the Court conducted a pretrial conference to hear argument of the parties' pretrial motions [ECF No. 138]. At the conclusion of the proceedings, the Court took the motions under submission. After review of the parties' motions, supporting exhibits and memoranda, and consideration of the parties' arguments, the Court rules as follows.

## I.     PLAINTIFF'S MOTION TO COMPEL DEFENDANT TO PRODUCE UNREDACTED COPY OF OIG COMPLAINT [ECF No. 122]

Plaintiff asks the Court "to order Defendant to provide Plaintiff with an unredacted copy of the OIG complaint at issue in this case for the reasons set forth in Plaintiff's Trial Brief (doc. 119) . . . which are incorporated by reference herein." In her Trial Brief [ECF No. 119], Plaintiff claims she did not object to redaction of the identity of the OIG complainant during the discovery phase just in case "there was insufficient evidence to proceed to trial." Plaintiff believes she already knows the identity of the complainant, and argues an unredacted copy of the

complaint will aid her in calling "into question the fairness of the manager assigned to investigate the complaint."

In response [ECF No. 126], Defendant points out the motion was submitted over four months after the Court's deadline for discovery motions, and argues the motion is not in compliance with Local Rule 37 – 3.04. Further, Defendant mentions Plaintiff's previous agreement to the redaction of the complainant's identity and Plaintiff's failure to bring up the issue in her second motion to compel in May 2014. Defendant concludes the disclosure of the OIG complainant would "chill[] the OIG complaint process" and contends the redaction does not "prevent Plaintiff from pursuing her long-standing theory of who made the complaint and connecting it with her allegation[s][.]"

This Court's interest in protecting the anonymity of the OIG complainant outweighs whatever probative value Plaintiff believes would result from disclosure. This interest is reflected in the Court's previous decision to provide a redacted copy of the complaint [*See* ECF No. 82]. Thus, the Court denies Plaintiff's Motion to Compel.

## II.  DEFENDANT'S MOTION IN LIMINE [ECF NO. 127]

In this Motion, Defendant asks the Court for evidentiary rulings on the following sixteen matters.

### 1.  Constructive Discharge References

Defendant asks to the Court to preclude any reference by Plaintiff "to, or inference of, any claims that she was 'forced to resign or quit' or 'felt compelled to quit or resign' and the like." Defendant anticipates Plaintiff will attempt to offer testimony regarding her previously-dismissed constructive discharge claim.

In response, Plaintiff claims she intends to show ("consistent" with her Complaint

alleging "hostile work environment discrimination based on gender") "the hostile work environment resulted in a tangible, adverse employment action."  Plaintiff seeks to "explain to the jury the facts and circumstances surrounding her departure" in May 2005.  Believing the circumstances to be relevant to her remaining claims, Plaintiff intends to present the following evidence at trial: (1) the hostile work environment and its impact on her mental health caused her to leave her job; and (2) her managers created this environment to try to force her to quit.

To avoid confusion of the issues and unfair prejudice to Defendant [Fed. R. Evid. 403], the Court will exclude evidence offered by Plaintiff using the language "forced to quit" or "forced to resign," as well as evidence characterizing her managers as conspiring to "force her to quit" or "force her to retire."  Plaintiff may present evidence portraying her situation as one where the managers "made her life miserable" and conspired to do so.

### 2. References to "Sexual Harassment"

Defendant seeks to bar Plaintiff's use of the term "sexual harassment" and asks the Court to instruct Plaintiff to use the term "hostile work environment" "when talking of harassment based on sex."  Defendant emphasizes the jury may be confused, "as they may not be able to differentiate between 'quid pro quo' sexual harassment and 'hostile work environment' harassment based on sex."

In response, Plaintiff acknowledges she is not claiming she was subjected to unwelcome verbal or physical sexual advances.  Plaintiff emphasizes she has no plans to introduce evidence other than that presented in her summary judgment motion, adding she has no objection to the final jury instruction referring to the relevant claim as "gender harassment" or "gender hostile work environment."

To avoid confusion of the issues and unfair prejudice to Defendant [Fed. R. Evid. 403],

Plaintiff must avoid presenting evidence that characterizes her treatment as "sexual harassment." At the pretrial conference, both parties agreed "hostile work environment based on gender" is a fair characterization of the particular claim at issue.

### 3. Punitive Damages References

Defendant seeks exclusion of any reference to or request for punitive damages by Plaintiff, requesting Plaintiff be "precluded from inferences such as 'sending a message to the government,' 'aggravating circumstances,' 'punish the defendant,' 'warning to others,' 'deter future conduct,' etc." Plaintiff acknowledges there is no claim for punitive damages, "and she does not intend to request such relief at trial."

At pretrial conference, both parties agreed this point is now moot.

### 4. Evidence Relating to Medical Bills or Expenses

Defendant seeks to exclude "evidence relating to medical bills and expenses allegedly incurred by, or paid by or on behalf of, Plaintiff." Plaintiff states it does not intend to introduce evidence of medical bills or expenses.

At pretrial conference, both parties agreed this point is now moot.

### 5. Witness Testimony Regarding Identity of OIG Complainant

Defendant seeks to bar "testimony from various witnesses regarding the identity of" the OIG complainant. Defendant references its Response to Plaintiff's Motion to Compel on this issue. In response, Plaintiff incorporates by reference her arguments on this issue discussed in her Trial Brief and Motion to Compel. However, Plaintiff acknowledges she would not attempt to elicit the identity of the complainant through witnesses if the Court orders the identity to remain confidential.

Because the admissibility of this evidence will turn on the basis upon which such

witnesses claim to know the identity of the OIG complainant, the Court is unwilling at this stage to make a definitive ruling. Accordingly, Plaintiff is not permitted to call any witness for such a purpose without first bringing it to the attention of the Court and allowing it to evaluate the purported foundation and rule on the admissibility of the testimony.

**6.   References to DUI Arrests**

Defendant argues Plaintiff should be precluded from introducing evidence of Steve Newman's DUI arrests, evidence that Steve Newman admitted to having a "problem with alcohol," and related inferences involving Steve Newman's drivers' license. Defendant contends such evidence is irrelevant to Plaintiff's claims and would be an improper character attack for purposes of a credibility determination.

Plaintiff argues Steve Newman's two prior DUI arrests and the admission of an alcohol problem "make it more likely that S. Newman consumed alcohol at inappropriate times (at work) as Plaintiff contends." Plaintiff contends this evidence is relevant to her alleged interactions with Steve Newman at work, as well as her theories about Steve Newman's affair with Laura Lammert.

Federal Rule of Evidence (FRE) 609 allows parties to attack a witness' character for truthfulness by introducing extrinsic evidence of *convictions* for certain crimes. Fed. R. Evid. 609 (emphasis added). No other specific instances of a witness' conduct, introduced for the purpose of attacking their character for truthfulness, may be proved through extrinsic evidence. Fed. R. Evid. 608(b). Rather, a party may ask a witness about such conduct on cross-examination, if it is probative of the witness' character for truthfulness. *Id.* However, "cross-examination about arrests without convictions is precluded[.]" *U.S. v. Dennis*, 625 F.2d 782, 798 (8th Cir. 1980).

Here, Steve Newman's arrests were not followed by convictions. Thus, if Steve Newman testifies, Plaintiff is barred from impeaching him through extrinsic evidence of his DUI arrests (or the other DUI-related evidence). *See* Fed. R. Evid. 608(b). Further, Plaintiff would be unable to impeach Steve Newman by asking him on cross-examination about his arrests, alleged alcoholism admission, or drivers' license issues, because: (1) questions about the arrest would be improper here under *Dennis*; and (2) the Court finds all three forms of the DUI evidence on which this objection is based are not probative of Newman's character for truthfulness or untruthfulness. *See* Fed. R. Evid. 608(b). This addresses Defendant's "character attack" and "credibility determination" concern.

Further, Plaintiff may not introduce evidence of this DUI-related evidence for any other purpose (e.g., pursing her theory Steve Newman consumed alcohol at work). Although such evidence is technically relevant to Plaintiff's theories, its probative value is substantially outweighed by the danger of unfairly prejudicing the jury against Defendant. Fed. R. Evid. 403. Thus, Defendant's Motion is granted.

### 7. DUI Arrests as Evidence of Similar Situations

Defendant seeks to exclude evidence of Steve Newman's DUI arrests and non-convictions for purposes of establishing Steven Newman was "similarly-situated" to Plaintiff. Defendant argues current law makes it impossible for Steve Newman and Plaintiff to be found "similarly-situated." In response, Plaintiff again references her Trial Brief, specifically her discussion of "similarly-situated" case law. Plaintiff argues this evidence, as well as Eischen's treatment of Steven Newman, is relevant to her disparate treatment claim.

Again, Plaintiff may not introduce evidence of Steve Newman's DUI arrests for any purpose (e.g., pursing her theory Steve Newman was similarly-situated but treated differently).

The Court reiterates its conclusion the probative value of such evidence is substantially outweighed by the danger of unfairly prejudicing the jury against Defendant. Fed. R. Evid. 403. Thus, Defendant's Motion is granted.

However, the Court makes no ruling on whether Plaintiff and Steve Newman are similarly-situated. Plaintiff correctly points out the Eighth Circuit uses a "low threshold" for "similarly-situated" analysis at the prima facie stage, and a "more rigorous" standard ("similarly situated in all relevant aspects") at the pretext stage. *Rodgers v. U.S. Bank, N.A.*, 417 F.3d 845, 852-853 (8th Cir. 2005), *abrogated* on other grounds by *Torgerson v. City of Rochester*, 643 F.3d 1031 (8th Cir. 2011). In its Summary Judgment Order, this Court found Defendant had not shifted the burden back to Plaintiff for this more rigorous stage, because Defendant had not argued "legitimate, nondiscriminatory reason[s]" [ECF No. 109 at 12]. Thus, at this point, Plaintiff may pursue her theory that she and Steve Newman are similarly situated.[4]

### 8. References to Petitions for Protective Orders

Defendant seeks to bar the introduction of evidence relating to a pair of ex parte petitions for orders of protection (involving Steve Newman). Defendant argues such evidence is irrelevant to Plaintiff's claims, constitutes an improper character attack, and is "improper[ly] use[d] for determining credibility." Plaintiff responds by arguing Steve Newman's previous conduct toward his ex-wife shows "his propensity to bully and threaten women, making such evidence relevant" to Plaintiff's claims about his interaction with her.

The Court will grant Defendant's Motion. Even if this evidence is relevant to Plaintiff's claims, any probative value is substantially outweighed by a danger of unfair prejudice to Defendant. Fed. R. Evid. 403.

---

[4] But again, Plaintiff's evidence in support of this theory may not include the DUI-related evidence.

### 9. AWOL Status as Part of Retaliation Claim

Defendant seeks to preclude Plaintiff's use of evidence relating to being placed on AWOL for the purpose of establishing her retaliation claim. Defendant points to this Court's previous ruling on this issue in its summary judgment Order: "Thus, the Court will not consider Plaintiff's placement on AWOL status as an independent basis for her retaliation claim" [ECF No. 109 at 21 n. 14]. Plaintiff points to her Jury Instruction No. 25 to show her placement on AWOL will not be discussed as a basis for relief on her retaliation claim, noting such evidence will be used to show pretext in accordance with this Court's Summary Judgment Order.

At the pretrial conference, both parties agreed this point is now moot.

### 10. Social Security Disability Finding

Defendant argues the Social Security Administration's (SSA's) determination Plaintiff is disabled "is not admissible as proof of Plaintiff's claim of being permanently disabled in this case, and that such evidence is unduly prejudicial under Rule 403" of the Federal Rules of Evidence. Specifically, Defendant believes "Plaintiff will attempt to introduce this evidence solely as evidence that Plaintiff is disabled as a result of the work environment at SLDO." Defendant asks the Court to preclude Plaintiff "from introducing any evidence within the administrative record of the SSA determination, with the exception of medical records as only medical records of the Social Security file were produced, and not the entire Social Security file."

Plaintiff argues the evidence of the SSA's determination is relevant to the proceeding, because it explains "why she is claiming complete salary loss from the time of her discharge to [the] present." At the pretrial conference, Plaintiff added the Social Security disability finding would be helpful in her cross examination of Dr. Askenazi (Defendant's expert witness).

The Court grants Defendant's Motion in part. Plaintiff may present evidence that she is receiving Social Security benefits. However, any evidence of how or why the SSA found Plaintiff disabled (including any inference that she is permanently disabled because of her work environment) will not be admitted. The Court does not wish to see this trial descend into an undue examination of the SSA's disability determination. Any probative value of such evidence is substantially outweighed by the danger of unfair prejudice to Defendant, confusion of the issues, misleading of the jury, undue delay, and wasting time. Fed. R. Evid. 403. One possible exception to this would be on Plaintiff's cross-examination of Dr. Askenazi, and on this point, the Court is unwilling at this point to make a definitive ruling. The Court will consider objections pertaining to this issue during Plaintiff's cross-examination or beforehand when a party requests an advance ruling. Accordingly, this aspect of Paragraph 10 is held in abeyance. Otherwise, the evidence to which Defendant objects on this issue will be excluded.

### 11. Damages Calculations

Anticipating Plaintiff will claim lost benefits, Defendant seeks to preclude Plaintiff's use of the OPM Salary tables from 2004-2014 and introduction of other evidence of economic damages. Defendant points out there has been no request for or suggested evidence of economic damages, and Defendant argues allowing Plaintiff to introduce evidence of economic damages at trial ("without allowing Defendant the opportunity to endorse a rebuttal witness/expert to opine present value and discount rates") would be highly prejudicial. Defendant adds Plaintiff has only requested compensatory damages and attorney's fees, and argues "Plaintiff should be limited to those damages requested."

Plaintiff contends her Complaint, in addition to requesting compensatory damages and attorney's fees, "seeks all other relief to which Plaintiff may be entitled." Further, Plaintiff notes

her initial disclosures (filed in May 2013) mention she is "seeking back pay and damage for her emotional injury."

The Court finds no reason at this time to limit the evidence Plaintiff may introduce regarding her desired remedies. Plaintiff's Complaint asks for compensatory damages, attorney's fees, "and all other relief to which Plaintiff may be entitled" [ECF No. 1 at 8]. District courts have "broad equitable discretion to fashion back pay awards in order to make the Title VII victim whole." *E.E.O.C. v. Delight Wholesale Co.*, 973 F.2d 664, 669-670 (8th Cir. 1992) (internal citation omitted). The Court will allow Plaintiff to introduce evidence relevant to establishing her right to any relief to which she is entitled, and Defendant certainly has the right to cross-examine extensively concerning any damages issues raised by Plaintiff. Therefore, Defendant's Motion is denied.

### 12. Kathleen Kloeckner, Vincent Kloeckner, and Patrice Crotty

Defendant seeks the exclusion of testimony by Kathleen Kloeckner, Vincent (Bill) Kloeckner, and Patrice Crotty. Defendant argues these individuals "have no direct knowledge of any workplace discrimination" and "would only be able to testify regarding non-economic damages, at best" (to which Plaintiff can testify fully without these witnesses, making these witnesses' testimony "cumulative"). Plaintiff contends these "lay witnesses" "may testify as to what they observed as the impact of Defendant's conduct on Plaintiff" (citing Federal Rule of Evidence 701).

The Court finds no reason why these witnesses should not be allowed testify about information relevant to Plaintiff's claims (e.g., their observations of Plaintiff during the time period at issue). The Court denies Defendant's Motion.

### 13. Tim Lammert

Defendant asks the Court to preclude Tim Lammert (ex-husband of Laura Lammert) from testifying in this case.  Defendant believes Tim Lammert's testimony (which is "subject to bias regarding potential motives against his ex-wife") will be used to identify the OIG complainant.  Plaintiff contends Tim Lammert's potential bias is "no reason to exclude his testimony" (which, if he is called, would relate to his knowledge of his ex-wife's affair with Steve Newman).

The Court denies Defendant's Motion in part.  With exception to the identity of the OIG complainant, Mr. Lammert may testify to anything relevant (e.g., the date his ex-wife's affair with Steve Newman began).  However, because the admissibility of any testimony about the identity of the OIG complainant will depend on the basis upon which Mr. Lammert claims to know said identity, the Court is unwilling at this stage to make a definitive ruling as to that issue.  Plaintiff may not call Mr. Lammert to testify for this purpose without first bringing it to the attention of the Court and allowing it to evaluate the purported foundation and rule on the admissibility of the testimony.

### 14. Kathy Newman

Defendant seeks to preclude Plaintiff from calling Kathy Newman (ex-wife of Steve Newman) as a witness, believing Kathy Newman will testify as to the pair of ex parte petitions for orders of protection discussed in Paragraph 8.  Defendant argues Kathy Newman's "biased testimony" is extremely prejudicial (as a character attack on Steve Newman) and irrelevant to Plaintiff's claims.  Plaintiff reiterates her arguments from Paragraphs 8 and 13 of her Response to Defendant's Motion in Limine [ECF No. 133].

The Court grants Defendant's Motion in part.  For reasons stated *supra*, Plaintiff may not call Kathy Newman to testify about the identity of the OIG complainant without first bringing it

to the attention of the Court, allowing it to evaluate the purported foundation and rule on the admissibility of the testimony. Further, to avoid unfair prejudice to Defendant, Ms. Newman is prohibited from testifying about her ex-husband's DUI arrests or her ex parte petitions for protection orders. Fed. R. Evid. 403. However, Ms. Newman may otherwise testify about any other relevant issue (e.g., the date her ex-husband's affair with Laura Lammert began).

### 15. Dennis Tilson and Dan Young

Defendant seeks to exclude the testimony (and the 2003-2004 and 2004-2005 "annual appraisals") of Dennis (Dan) Tilson and Dan Young for purposes of Plaintiff's attempt to show similarly-situated employees were treated more favorably. Defendant argues the law does not support a finding that these individuals and Plaintiff are "similarly-situated." Plaintiff claims Tilson and Young are similarly-situated with Plaintiff, and thus, their testimony is relevant for purposes of her prima facie case.

Again, at this point, the Court refuses to determine with whom Plaintiff is similarly-situated as a matter of law. Thus, Defendant's Motion is denied.

### 16. Dr. Michael Armour

In his Motion, Defendant reserved the right "to submit any argument regarding Dr. [Michael] Armour's testimony" at the pre-trial conference. At the pretrial conference, Defendant asked the Court to limit the admissibility of Dr. Armour's testimony. Specifically, Defendant argued Dr. Armour should only be able to testify as to Plaintiff's condition in August 2008 (the only time Dr. Armour met with Plaintiff), as opposed to the permanency of Plaintiff's condition over the last six years. Plaintiff emphasized the relevance of her condition in 2008, claiming she would not attempt to elicit testimony from Dr. Armour regarding anything else. Therefore, the Court excludes any testimony by Dr. Armour beyond Plaintiff's condition in August 2008.

### III.    PLAINTIFF'S MOTION IN LIMINE [ECF NO. 128]

In this Motion, Plaintiff asks the Court for evidentiary rulings on the following eleven

matters.

#### 1.    Previously-Dismissed Claims

Plaintiff seeks to exclude evidence concerning Plaintiff's previously-dismissed claims

(for age and disability discrimination), arguing the dismissed claims are no longer relevant or, in

the alternative, inadmissible under Federal Rule of Evidence 403.  Defendant states he will not

attempt to introduce evidence of either age discrimination or disability discrimination.

At the pretrial conference, both parties agreed this point is now moot.

#### 2.    Cancellation of Plaintiff's EEOC Hearing

Plaintiff contends Defendant should be barred from introducing evidence showing

"Plaintiff's EEO hearing was cancelled based upon a finding that she had engaged in bad faith

conduct during discovery," arguing such evidence is irrelevant or, in the alternative, inadmissible

under Rule 403.  Defendant states he will not attempt to introduce evidence regarding why

Plaintiff's EEO hearing was cancelled; nor will Defendant attempt to introduce Plaintiff's

conduct during the discovery phase at the administrative level of this matter.

At the pretrial conference, both parties agreed this point is now moot.

#### 3.    "Box of Documents"

Plaintiff asks the Court to preclude "evidence that Plaintiff testified during her deposition

in the EEO case . . . she had a box of documents that were not submitted to the Department of

Labor as part of the investigation into her discrimination complaint, which by 2014 she could no

longer locate due to several moves."  Plaintiff argues the box of documents is irrelevant or, in the

alternative, inadmissible under Rule 403.  Defendant states he will not attempt to introduce

evidence regarding this "box of documents."

At the pretrial conference, both parties agreed this point is now moot.

### 4. Plaintiff's Expletive

Plaintiff seeks to exclude testimony showing "at some time between 1998 and 2000," Plaintiff told Steve Newman she "was not going to do anything for the agency" and she said, "F**k them. They're going to like it." Plaintiff argues such testimony would be irrelevant to her performance in 2004/2005 or, in the alternative, inadmissible under Rule 403. Defendant's counsel states he will not attempt to introduce evidence in the form of testimony from Steve Newman regarding this statement.

At the pretrial conference, both parties agreed this point is now moot.

### 5. Testimony By Co-Workers

Plaintiff seeks to exclude testimony from Plaintiff's co-workers regarding "whether they observed Plaintiff being subjected to a hostile work environment, and/or more specifically that they had no knowledge that S. Eischen, S. Newman, or G. Newman discriminated against or created a hostile work environment as to anyone." Plaintiff cites out-of-circuit cases finding anecdotal evidence and opinion from other employees non-probative or irrelevant.

Defendant claims he does not intend to elicit testimony from fact witnesses as to whether "they witnessed the conclusory issues of 'gender discrimination' or 'hostile work environment,'" but Defendant will ask co-workers to testify as to their personal perceptions and observations of the work environment and the managers (just "without the legal-tint"). Further, Defendant intends to elicit testimony from witnesses as to whether they witnessed events relevant to the elements of each claim.

Because the admissibility of this evidence will turn on the particular facts at the time a

party seeks to introduce it (including the form and phrasing of the examiner's questions), the Court is unwilling at this stage to make a definitive ruling. The Court will consider objections pertaining to this issue as the parties present evidence or before they present evidence when a party requests an advance ruling. Accordingly, Plaintiff's Motion is held in abeyance.

### 6. Dr. Askenazi's Rule 35 Report

Plaintiff argues the Rule 35 report of Dr. Galit Askenazi should be excluded as hearsay and cumulative evidence. Defendant concedes Dr. Askenazi's report should not be admitted into evidence and published for the jury. However, Defendant intends to question Dr. Askenazi regarding the contents in her report, and Defendant contends Dr. Askenazi "must" have her report available to her while testifying ("to refer to her report to refresh her recollection").

At the pretrial conference, both parties agreed this point is now moot.

### 7. Plaintiff's Statements to Dr. Askenazi

Plaintiff contends any statements made to Dr. Askenazi by Plaintiff should be excluded as hearsay. Defendant argues Plaintiff's comments to Dr. Askenazi are not hearsay because Plaintiff is a party.

Because the admissibility of this evidence will turn on the particular facts at the time a party seeks to introduce it, the Court is unwilling at this stage to make a definitive ruling. The Court will consider objections pertaining to this issue as the parties present evidence or before they present evidence when a party requests an advance ruling. Accordingly, Plaintiff's Motion is held in abeyance.

### 8. Dr. Askenazi's Testimony About "Malingering"

Plaintiff seeks to exclude any opinion evidence from Dr. Askenazi's report or testimony by Dr. Askenazi "that Plaintiff is not credible," including but not limited to "statements that

Plaintiff was exaggerating symptoms and/or malingering . . ., made non-credible memory complaints . . ., was grossly exaggerating, if not fully fabricating symptoms of psychopathology . . ., and/or that her reporting was most consistent with fabrication of symptoms."  Plaintiff also seeks exclusion of Dr. Askenazi's "opinion" (found in the report) "that Plaintiff's testimony was inconsistent with the notes of a Physician Assistant, who treated Plaintiff at the time of her discharge."  Plaintiff characterizes such aspects of Dr. Askenazi's report as a "comment on Plaintiff's credibility/reliability under the 'guise of a medical opinion'" that would "go beyond the scope of proper expert testimony."

Defendant responds by stating, "Plaintiff's psychological and neuropsychological conditions are a key element in this case regarding damages."  Thus, Defendant contends Dr. Askenazi's "expert testimony in this specialized area" should be admitted on the issue of non-economic damages, "as it is testimony of such an important nature to aid the jury in screening the properly admitted evidence to ascertain the truth as to Plaintiff's alleged psychological injuries."

The Court will allow Dr. Askenazi's anticipated testimony regarding specific instances of malingering by Plaintiff.  While the cases cited by Plaintiff involved testimony about "overall" or "general" credibility, Dr. Askenazi's likely testimony as to Plaintiff's malingering is not about credibility so much as it is about the degree to which Plaintiff may or may not have been affected by her work environment.  Any determination of malingering by Dr. Askenazi is an expert conclusion based on professional testing.  Therefore, consistent with FRE 702, as long as Dr. Askenazi avoids stating a broad opinion or conclusion as to Plaintiff's general credibility, her testimony regarding Plaintiff's malingering will be admitted.  Plaintiff's Motion is denied.

### 9.  Other Testimony About "Malingering"

For the same reasons espoused in Paragraph 8, Plaintiff seeks to bar Defendant from

attempting to elicit testimony from mental health "treaters/experts" about Plaintiff's credibility or "malingering." Defendant contends it has no intention of trying to elicit testimony that Plaintiff is a malingerer "in general," but "must be permitted to ask whether tests were administered or other methods were used to determine if Plaintiff's psychological complaints are real and to what extent they are impairing functioning, if they exist."

As with Paragraph 8 (and for the same reasons), Plaintiff's Motion is denied.

### 10. Brian Davis' Departure

Plaintiff seeks to exclude any evidence relating to the details surrounding Brian Davis' departure from the Department of Labor (pursuant to Plaintiff's Rule 403 and 608(b) objections at Davis' deposition). Plaintiff acknowledges Defendant's right to inquire into these circumstances for purposes of showing witness bias. Defendant argues Davis' credibility is "directly at issue" and states his "conduct and proposed removal . . . goes directly to potential bias."

Because the admissibility of this evidence will turn on the particular facts at the time a party seeks to introduce it, the Court is unwilling at this stage to make a definitive ruling. The Court will consider objections pertaining to this issue as the parties present evidence or before they present evidence when a party requests an advance ruling. Accordingly, Plaintiff's Motion is held in abeyance.

### 11. Amount of Disability Benefits

Plaintiff contends Defendant should be barred from presenting any evidence regarding the amount of Social Security Disability benefits Plaintiff has received from the Social Security Administration since May 18, 2005, arguing such evidence would violate the collateral source rule. Defendant states he has no intention of eliciting evidence as to the amount of Social

Security Disability benefits Plaintiff has received.

At the pretrial conference, both parties agreed this point is now moot.

## IV.     PLAINTIFF'S RESPONSE AND OBJECTIONS TO DEFENDANT'S EXHIBIT LIST [ECF No. 130]

During the pretrial conference, the Court considered objections made by Plaintiff.

### 1.   List of Non-Objections

For obvious reasons, this list was not discussed at the pretrial conference.

### 2.   Exhibit 1 (Complaint)

Plaintiff objects to the introduction of Exhibit 1 as it relates to her dismissed claims. Defendant has stated it will not introduce Exhibit 1.  This objection is now moot.

### 3.   Exhibits 6-10 (Affidavits)

Plaintiff objects to the admission of any purported prior inconsistent statements from these exhibits, except as permitted by Federal Rule of Evidence 801(d)(1)(B).  Defendant argues these affidavits are admissible under Rule 801(d)(1)(B) and suggests each witness' affidavit is admissible (subject to hearsay objections) if the declarants testify the statement in the affidavit is their statement and admit its truth.

Because the admissibility of these exhibits will turn on the particular facts at the time Defendant will seek to introduce it, the Court makes no ruling at this time.  The Court will consider objections pertaining to these exhibits as Defendant presents evidence or beforehand if a party requests an advance ruling.

#### 4.  Exhibit 73 (Dr. Askenazi's Rule 35 Report)

The parties' arguments, as well as this Court's rulings, regarding Dr. Askenazi's report (and various statements therein) are discussed in Paragraphs 6-8 of this Order relating to Plaintiff's Motion in Limine.

#### 5.  Exhibit 78 (Memo from Leonard Goggio to Gary Newman)

Plaintiff objects to the admission of this memo, claiming it is irrelevant or, in the alternative, its probative value is substantially outweighed by the dangers listed in Federal Rule of Evidence 403.  Defendant contends the memo is relevant because it relates to Plaintiff's job performance and credibility regarding her alleged work environment.  At the pretrial conference, Defendant noted the author of the memo (Leonard Goggio) has been subpoenaed in this case.  Because it is still unclear whether Goggio will respond to the subpoena, the Court chooses to delay further action on this issue and make no ruling at that time as to the admissibility of the memo.

#### 6.  Exhibits 87-89 (E-mails/Memo involving Leonard Goggio, S. Newman, G. Newman, Steve Eischen)

Plaintiff objects to the admission of these exhibits "because they relate to actions taken after Plaintiff left the Department and after S. Eischen, S. Newman, and G. Newman were aware of Plaintiff's EEO compliant to include allegations of gender discrimination[.]"  In response, Defendant points out Plaintiff's Exhibit List includes several documents dated after plaintiff left the Department.

Because the admissibility of this evidence will turn on the particular facts specific to each document (including the circumstances surrounding their creation), the Court is unwilling at this stage to make a definitive ruling.  The admissibility of e-mails (and by inference, memoranda) as

business records exempt from hearsay exclusion is not a clear-cut issue. Multiple courts have determined, "An e-mail created within a business entity does not, for that reason alone, satisfy the business records exception of the hearsay rule." *U.S. v. Cone*, 714 F.3d 197, 221 (4th Cir. 2013) (citing *Morisseau v. DLA Piper*, 532 F.Supp.2d 595, 621 n. 163 (S.D.N.Y. 2008). The Court will consider objections pertaining to these exhibits as the parties present evidence or before they present evidence when a party requests an advance ruling. Accordingly, Plaintiff's Objection is held in abeyance.

### 7. Exhibits 80, 81, 91, 92, 96, 98, 99, 100, 105, 110, 115, 116, and 117

In response to Plaintiff's objections to these exhibits, Defendant's Response states the parties have resolved the issue surrounding exhibits Plaintiff believed were not produced during pretrial discovery. During the pretrial conference, both parties agreed this point is now moot. As part of that discussion, both parties agreed Exhibit 105 could be admitted without objection.

### 8. Exhibits 118-121

Plaintiff objects to the admission of these exhibits "on the grounds that issues relating to witness Brian Davis were known to Defendant as of April 24, 2014 when S. Eischen gave his deposition but no documents were produced relating to Mr. Davis until September 16, 2014 (the day before his deposition) and well after the close of discovery." Plaintiff also objects on the grounds of Federal Rules of Evidence 106, 403, and 608(b).

Defendant notes although these exhibits were going to be used at Brian Davis' deposition, Davis was deposed by video. As a result, these exhibits were not offered into evidence or presented to the witness during deposition. However, Defendant claims these documents were produced during the summary judge phase.

Because the admissibility of these exhibits depends on the particular facts specific to each document, the Court is unwilling at this stage to make a definitive ruling. Again, the admissibility of e-mails (and by inference, memoranda) as business records exempt from hearsay exclusion is not a clear-cut issue. The Court will consider objections pertaining to these exhibits as the parties present evidence or before they present evidence when a party requests an advance ruling. Accordingly, Plaintiff's Objection is held in abeyance.

Accordingly,

**IT IS HEREBY ORDERED** that "Plaintiff's Motion to Compel" [ECF No. 122] is **DENIED.**

**IT IS FURTHER ORDERED** that "Defendant's Motion in Limine" [ECF No. 127] is **GRANTED in part,** and **DENIED in part**.

**IT IS FURTHER ORDERED** that "Plaintiff's Motion in Limine" [ECF No. 128] is **DENIED in part**.

**IT IS FURTHER ORDERED** that "Plaintiff's Response and Objections to Defendant's Exhibit List" [ECF No. 130] is **HELD IN ABEYANCE, in part**.

Dated this  30th  Day of September, 2014.


E. RICHARD WEBBER
SENIOR UNITED STATES DISTRICT JUDGE